# Exhibit A

# Plaintiff's Amended EEOC Statement

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

<u>NAILAH A. HARRIS, RN v. VCU HEALTH</u>
Charge of Discrimination
Charge No. 438-2024-02151

**AMENDED
<u>STATEMENT OF NAILAH A. HARRIS, RN</u>**

I, Nailah A. Harris, make the following amended statement in support of my Charge of Discrimination (the amended parts are set forth in paragraphs 18-30):

**Charge Summary**: Race Discrimination, harassment and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 and 3. Failure to accommodate disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

<u>Race Discrimination, Harassment and Retaliation</u>

1. I am an African American female residing in the County of Hanover, Virginia.

2. I make this statement in support of my Charge of Discrimination alleging race discrimination retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 and 3; and in support of my Charge for disability discrimination in violation of the Americans with Disabilities Act for failure to accommodate my disability, 42 U.S.C. § 12101, et seq.

3. The respondent VCU Health operates medical facilities connected with Virginia Commonwealth University, including the Children's Hospital of Richmond at VCU (ChoR), which is located at 1000 East Broad Street, Richmond, Virginia 23298.

4. I have been a Registered Nurse for 17 years. I began working for CHoR on August 21, 2023, as a Clinical Coordinator in the Transitional Care Unit. I earn a base salary of $45.00 per hour, with a pay differential for weekend shifts, plus employment benefits. My direct supervisor is Jennifer Farmer, Director of Nursing (DON), and her second line supervisor is Stacy Coleman,

Nursing Home Administrator (NHA). I also work alongside Ashley Pitts, RN (Interim Nurse Clinician) and Elizabeth Overstreet (Interim Clinical Coordinator). I have performed my duties in an exemplary fashion for VCU Health.

5. Early in my tenure as Clinical Coordinator, Farmer called upon me to prepare coaching memos and issue written disciplinary notices for African American nurses in the unit, often for nurses over whom I had only shared or minimal supervisory responsibility. Notably, none of the Caucasian Clinical Coordinators were delegated this responsibility. I was never directed to counsel or discipline any white nurses during my time at CHoR, despite several white nurses deserving such measures.

6. I made further observations of racial discrimination at CHoR in or about September 2023 when a master's degree prepared African American nurse was demoted from her position as Nurse Clinician to staff nurse. Later that month, the DON announced that Ashley Pitts (then a Clinical Coordinator) would remain in her role with a strong focus on improving orientation processes, onboarding and continuing education. In November 2023, Pitts was promoted to Interim Nurse Clinician, filling the former Nurse Clinician's position. At that time, Pitts did not have the minimum qualification of a bachelor's degree required for the position, and the position had not been posted or announced as vacant before Pitts was selected for that role. Farmer and Coleman stated that the previous Nurse Clinician was demoted and implied that the reason was poor work performance. I was aware, however, that the demoted nurse had been performing exceedingly well in every role assigned to her.

7. From July 2023 to May 2024, I observed records indicating Pitts having arrived late for work approximately 40 times. Pitts was often absent without excuse, despite being a scheduled, hourly employee. To avoid apparent disruptions to the work schedule, Coleman

removed Pitts from the schedule in May 2024, allowing her to arrive and leave work at will. I expressed my concerns to Farmer that Pitts' uneven attendance created a lack of accountability that negatively affected staff morale. I also shed light on Pitts' having been approved for additional pay for scheduled shifts by Coleman, without meeting the standard organizational requirements. Farmer responded that other Nurse Clinicians in the organization were salaried and not required to clock in or out, but was inaccurate, as Pitts was initially required to record her hours before her attendance irregularities began. Pitts has since been promoted to the role of Nurse Clinician. This indicated favoritism by management.

      8. In January 2024, an African American Infection Prevention/Minimum Data Sets (IP/MDS) nurse was moved to a lateral position as RN Care Coordinator and falsely told that the position was being split. The IP/MDS position remained the same but was restructured to a management position at a higher pay grade, without offering the elevated position to the former African American nurse. This position was later filled by a Caucasian nurse and close friend of Farmer.

      9. In April 2024, Farmer hired another close friend, Elizabeth Overstreet, into an Interim Clinical Coordinator position, for weekday coverage. Less than a month later, I was asked to complete Overstreet's annual peer evaluation, which I respectfully declined due to my limited exposure to Overstreet's interactions with patients and staff. Farmer was insistent that I write Overstreet's evaluation, which she expressed via emails and in a follow up discussion. Reports of Overstreet's bullying and intimidating conduct soon followed.

      10. On May 30, 2024, I submitted requests for consultation with VCU Health's Office of Diversity, Equity & Inclusion (DEI) and the Employee Relations Department. The following day, I met virtually with DEI Officer Stacy Johnson, who subsequently filed a written EEO

complaint with Employee Relations about my experiences with Farmer and Coleman. The written complaint detailed the racial discrimination exhibited by these white supervisors. During my meeting with Johnson, I expressed my belief that I was being used as a "buffer" by Farmer to discipline African American nurses in a manner that insulated white nurse supervisors from accusations of race discrimination. This belief stemmed from a prior discussion with Farmer, in which she disclosed that she had previously been accused of racism by VCU Health staff members.

      11. Following the submission of my DEI complaint, I began receiving derogatory emails criticizing my work, notably from Overstreet and either co-signed or further endorsed by Farmer. Farmer's critiques intensified and included false statements that deliverables were outstanding despite their completion. Farmer began restricting my supervisory duties and insisted that I work independently on tasks that were previously shared. Farmer also began closely monitoring my attendance and time keeping and sent me emails and texts on the subjects with increased frequency. Recently, Farmer has required me to submit written explanations and/or rationales to justify time worked and pay differentials, none of which were requested before I complained to DEI and Employee Relations.

      12. After requesting a consultation with the Employee Relations, and subsequent filing of a written EEO complaint, I observed a delay in correspondence with an Employee Relations Partner. I made several outreaches to Employee Relations via phone and email and on June 3, 2024 I was successful in making contact with Lisa Snowa (VCU Health's Employee Relations Manager). Snowa informed me that there was a large volume of open cases and subsequently advised me to escalate the matter to next-level leadership. I was unsuccessful in securing a

meeting with my assigned Employee Relations Partner, Annie Duncan, until June 18, 2024. I met briefly with Duncan via phone on June 20, 2024.

      13. I completed skip-level meetings with Jessica Stewart-Collins (Senior Administrator Children's Services) and Ellen Derry (Associate Chief Nursing Officer) on June 12, 2024. On June 14, 2024, Farmer left coasters on my desk with undesirable messages, including one implying that I should drop my complaints. On June 19, 2024, a standard monthly leadership meeting involving Coleman, Farmer, Pitts, Overstreet and I turned into a tense counseling discussion. During this virtual meeting, Farmer relayed her personal sentiments and responses to concerns that I had previously disclosed in confidence during my skip-level meetings.

      14. In the following weeks, I endured a series of work disruptions from Coleman, Farmer, Pitts, and Overstreet. Farmer and Coleman revoked my ability to work remotely and retrieved my work laptop, requiring me to come into the hospital ahead of my weekend shift for duties that I could previously complete at home. I was forced to move all my belongings and workstation, in an office where I have been the sole occupant since April of 2024. Additionally, Farmer removed my access to leadership files, including the electronic call-out log, hindering my ability to perform work related duties. Overstreet archived my access to the staffing communication platform.

      15. On several instances, Coleman and Pitts altered components of staff schedules and profiles, with Farmer and Overstreet subsequently accusing me of committing scheduling errors and requiring me to inform staff of said discrepancies and duplicate several work-related tasks. Farmer and Coleman are now requiring that I be included in the daily floor staffing, in contrast to historical guidelines that Clinical Coordinators serve in staffing with 5 or fewer nurses. These

actions removed me from supervisory responsibilities and denied me the resources to perform my work effectively.

16. I am aware of other African American nurses at CHoR who have resigned in frustration due to race discrimination or were forcibly transferred. I know of African American nurses who have been bullied, harassed, written up, placed on administrative leave and threatened with termination.

17. I am being harassed because of my race and am not the only Black nurse facing such bias. My white superiors and cohorts are retaliating against me for complaining about discrimination against African American nurses. VCU Health has violated my rights against race discrimination and retaliation prohibited under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 3. This has damaged my livelihood and work record and inflicted emotional harm.

<u>Disability Discrimination and Refusal to Afford Reasonable Accommodation</u>

18. I suffer from Major Depressive Disorder, Generalized Anxiety Disorder and Post-Traumatic Stress Disorder. I was diagnosed and am being currently treated by Chelsea Snyder, PMHNP-BC, and Julie Canada, LPC, each of whom specializes in psychiatric mental health.

19. My condition affects my ability to sleep, concentrate, think, communicate and work. Despite my disabilities, I am able to perform my job duties with reasonable accommodation. Accordingly, I am a qualified individual with a disability under the ADA.

20. On September 30 2024, I began a medical leave of absence from VCUHS due to the mental stress and emotional turmoil resulting from the harassment, discrimination and retaliation I endured from my supervisors and managers described in the preceding paragraphs.

21. Ms. Snyder released me to work in January 2025 so long as VCUHS afforded me certain accommodations for my depression, anxiety and PTSD. I submitted to Annie Duncan, Employee Relations Partner at VCUHS, an ADA Reasonable Request Form. That multipage form included a Health Care Provider Certification completed and signed by Ms. Snyder.

22. The accommodations requested were:

(a) 8-hour work days for a temporary period. (My work days are customarily 12-hours per day, 3-days per week.)

(b) Reassignment to a different vacant hospital unit within VCUHS due to anxiety and interpersonal work stressor, i.e., working with Jennifer Farmer and Stacy Coleman.

(c) Ability to complete my work in an available quiet space on the unit, or from home.

(d) Provision of transcript or notes of all meetings with supervisors.

(e) Scheduling of one-on-one meetings with supervisors to discuss goals and necessary support.

23. On January 9, 2025, Ms. Duncan responded to my requested accommodations as follows:

(a) Request for temporary 8-hour schedule was APPROVED.

(b) Reassignment to another unit was DENIED. Ms. Duncan stated that the EEOC does not require job reassignment unless it is shown that no reasonable accommodation would enable the employee to perform the essential functions of the position that she already holds. VCUHS suggested no other form of accommodation to remedy the situation caused by Farmer and Colemen. Ms. Duncan invited me to provide additional information to justify my request for reassignment.

(c) Allowance of remote work or provision of a quiet office space was DENIED.

(d) Provision of a transcript of notes of meetings was DENIED. Ms. Duncan allowed me to provide additional information to support this request.

(e) Scheduling of meetings was APPROVED for a period of 90 days.

24. With respect to reassignment, the ADA specifically lists "reassignment to a vacation position" as a form of reasonable accommodation. 42 U.S.C. § 12111(9)(b). The EEOC considers reassignment an accommodation of last resort, required only if there are no effective accommodations that will allow the employee to return to work.

25. Ms. Snyder responded to Ms. Duncan by stating that my major depression, generalized anxiety and symptoms of PTSD were exacerbated "due to department and workplace dynamics."

> More specifically, these symptoms have been exacerbated by experience of poor communication and interpersonal stressors with individuals on the currently assigned unit. It is noted that Ms. Harris' diagnosis of PTSD is directly related to the report of prolonged bullying, acts of discrimination, and harassment in the current work environment. While this provider cannot speak to the workplace dynamics, Ms. Harris does report an increase in related symptoms to include frequent intrusive thoughts, poor concentration, difficulty with task completion, low motivation, hypervigilance, avoidance, and self-isolation, with reported onset in May 2024. Ms. Harris has been working to address these symptoms proactively in psychiatric medication management, intensive outpatient programming, and in individual therapy 2x weekly with this provider. Ms. Harris would benefit from reassignment to reduce exposure to aggravating factors.

26. Given the discrimination and on-going retaliation, there is no reasonable accommodation short of reassignment that would allow me to perform the essential functions of my position.

27. In response to VCUHS's denial of my request for a quiet space, Ms. Snyder responded as follows:

> The nature of the available space is described as "only briefly shared on Fridays with the clinical coordinator rolling off duty, and is otherwise generally unoccupied. The office is provided for the use of physicians who rarely use it on the weekends." Ms. Harris is currently experiencing significant intrusive thoughts, poor concentration, and difficulty with task completion. Due to these challenges, if work from home is not a viable option, another quiet, empty space should be made available in lieu of the aforementioned office if it is not readily available when Ms. Harris needs to complete certain work accordingly.
>
> Additionally, symptoms are present in the specific environment of the identified department. Further, the recommendation for remote work or a quiet workspace is not intended for clinical coordinator-related duties, but rather for completing asynchronous work (e.g., work projects, chart audits, unit scheduling, online modules, etc.). This is directly related to an established diagnosis of ADHD.

28. In response to VCUHS' denial of my request for transcripts or transcribed notes of meetings with supervisors, Ms. Snyder responded as follows:

> Mrs. Snyder documented that "unedited transcripts or transcribed notes" would support Ms. Harris in essential functions through allowing Ms. Harris to maintain productivity and to communicate effectively while also appropriately addressing medical/psychiatric needs. These needs include managing significant symptoms of PTSD impairing essential job functions to include effective communication. Transcribed notes would benefit Ms. Harris in the event that symptoms impair concentration and/or short-term working memory. Additionally, transcribed notes would support in reducing hypervigilance exacerbated by PTSD, allowing Ms. Harris to clearly refer to points made in each meeting without room for question of what was said or what tasks were assigned. Additionally, Ms. Harris reports that she was previously only permitted to handwrite notes for meetings, which can pose challenges related to ADHD symptoms such as impaired attention, concentration, and short-term working memory.

29. VCUHS has not responded to the additional information provided by my provider. It has refused the most important parts of my requested accommodations. As a result, I have had to continue my leave of absence. I have incurred lost pay and increased emotional turmoil.

30. I am being refused reasonable accommodation for my disability and denied good faith participation in an interactive process to determine reasonable accommodation, in violation of my rights under the ADA.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News DIVISION

NAILAH HARRIS,
Plaintiff,

v.   Civil Action No. _____

VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (VCUHS);
JENNIFER FARMER, TCU Director;
STACY COLEMAN, Nursing Home Administrator;
ASHLEY PITTS, Nurse Educator;
ELIZABETH OVERSTREET, Registered Nurse (Supplemental Staffing);
ELLEN DERRY, Interim Chief Nursing Officer;
LISA SNOWA, Manager, Employee Relations;
ANNIE DUNCAN, Employee Relations Partner,
Defendants.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, proceeding pro se, moves this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for a Preliminary Injunction against Defendants, to prevent further irreparable harm pending the resolution of this case. In support of this motion, Plaintiff states as follows:

## FACTUAL BACKGROUND

Plaintiff was employed as a Clinical Coordinator with a salary exceeding $190,000 annually, plus benefits and a sign-on bonus. By September 2024, Plaintiff had earned $145,000 before going out on short-term disability. Plaintiff was cleared to return to work on December 30, 2024, but was denied reinstatement.

On March 16, 2025, VCUHS falsely reported to the Virginia Employment Commission that Plaintiff was medically discharged. On May 16, 2025, Plaintiff was informed that she had voluntarily resigned retroactive to May 9, 2025, despite never resigning. These actions were taken after coercing Plaintiff to sign a settlement agreement under threat of termination, which she refused.

Following Plaintiff's EEOC filing alleging race and disability discrimination, Defendants

escalated their retaliation: blocking Plaintiff's grievance process (Lisa Snowa), hiring four older white individuals into similar roles, and rejecting Plaintiff's ten internal job applications. Plaintiff has since amended her EEOC charge to include age and sex discrimination, ERISA interference, and additional retaliation claims.

## LEGAL STANDARD

A preliminary injunction is warranted when the moving party demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.

## ARGUMENT

### I. Likelihood of Success on the Merits

Plaintiff's claims are supported by substantial documentation, including her Amended EEOC Statement (Exhibit B to the Complaint) and a successful VEC appeal overturning the false separation classification. The factual record includes multiple instances of race, age, sex, and disability discrimination, retaliation, wrongful termination, and ERISA interference.

### II. Irreparable Harm

Plaintiff has been without income since December 30, 2024, lost access to medical, dental, and vision insurance, and is unable to obtain comparable employment due to blacklisting. These losses have caused severe emotional distress, PTSD, and the inability to continue necessary medical treatment. The harm is ongoing and cannot be fully compensated by monetary damages alone.

### III. Balance of Equities

The harm to Plaintiff from continued deprivation of income, benefits, and professional standing outweighs any inconvenience to Defendants from maintaining the status quo and halting retaliatory practices pending final resolution.

### IV. Public Interest

Granting the injunction serves the public interest by enforcing federal anti-discrimination statutes, protecting ERISA rights, and deterring unlawful retaliation against employees who

assert protected rights.

## RELIEF REQUESTED

1. Provide immediate payment of back wages and lost benefits from December 30, 2024, to present, and continue wages and benefits during the pendency of this case to prevent further irreparable harm;

WHEREFORE, Plaintiff respectfully requests that this Motion for Preliminary Injunction be granted and that the Court provide such other and further relief as it deems just and proper.

Respectfully submitted,

/s/ Nailah Harris
Pro Se Plaintiff
8020 Ellendale Drive
Mechanicsville, VA 23116
(804) 466-0522
Nailah.HarrisBSN@outlook.com
Date: August 12, 2025

UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

Nailah A. Harris,
Plaintiff,

v.                                    Civil Action No. _____

Virginia Commonwealth University Health System, et al.,
Defendants.

PLAINTIFF'S MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Plaintiff, Nailah A. Harris, respectfully moves this Court to transfer this action from the Richmond Division to the Newport News Division of the United States District Court for the Eastern District of Virginia.

## I. INTRODUCTION

Plaintiff brings this motion to ensure a fair and impartial adjudication of her claims of discrimination, retaliation, and related causes of action. Due to the Defendants' extensive ties to the Richmond area, including professional, institutional, and community relationships, Plaintiff has a reasonable concern that her case cannot be heard without undue local influence.

## II. BASIS FOR TRANSFER

1. Extensive Local Ties and Networking
VCU Health System is a major employer and healthcare provider in the Richmond area, with deep connections in the legal, medical, and educational communities. Many potential jurors and court personnel may have direct or indirect affiliations with the Defendants.

2. Blacklisting and Local Employment Impact
Plaintiff has experienced professional blacklisting in the Richmond region as a result of Defendants' actions. This has significantly hindered her ability to secure comparable employment locally and has caused ongoing economic and reputational harm.

3. Impact on Plaintiff's Family

Plaintiff's children are enrolled in local Richmond-area schools. Given the Defendants' local influence, Plaintiff is concerned that her children's education and school environment could be indirectly affected by the publicity and community awareness surrounding this litigation.

4. Fairness and Avoidance of Undue Influence

Transferring this matter to the Newport News Division, which is reasonably accessible to all parties, would reduce the risk of bias or the appearance of bias and promote the integrity of the judicial process.

## III. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to another division within the same district for the convenience of parties and witnesses and in the interest of justice. Courts consider factors including: (1) the convenience of witnesses; (2) the convenience of parties; and (3) the interest of justice.

Here, the interest of justice strongly supports transfer due to the likelihood of local bias and the need to preserve the appearance of impartiality.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court transfer the venue of this matter from the Richmond Division to the Newport News Division of the United States District Court for the Eastern District of Virginia.

Respectfully submitted,

Date: August 12, 2025

/s/ Nailah A. Harris
Nailah A. Harris
8020 Ellendale Drive
Mechanicsville, VA 23116
(804) 466-0522
Email: Nailah.HarrisBSN@outlook.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Newport News DIVISION

NAILAH HARRIS,

Plaintiff,

v.

Civil Action No. _____

VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (VCUHS),

Defendant.

## NOTICE OF FILING OF LITIGATION HOLD DEMAND

Plaintiff, Nailah Harris, hereby gives notice to the Court that she has served the attached Litigation Hold Demand (Exhibit 6) upon Defendant's counsel, Joan C. McKenna, Esq., O'Hagan Meyer, Richmond, Virginia.

The Litigation Hold Demand directs preservation of all potentially relevant evidence, including but not limited to personnel, benefits, grievance, VEC reporting, and electronically stored information, in connection with Plaintiff's claims of discrimination, retaliation, wrongful termination, and interference with protected rights under the ADA and ERISA.

1

Respectfully submitted,

/s/ Nailah Harris
Pro Se Plaintiff
8020 Ellendale Drive
Mechanicsville, VA 23116
Tel: (804) 466-0522
Email: Nailah.HarrisBSN@outlook.com

---

Exhibit B: Litigation Hold Demand Letter dated August 12, 2025

2