IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NALIAH HARRIS,

    Plaintiff,

v.                          Civil Action No. 3:25cv644

VIRGINIA COMMONWEALTH
UNIVERSITY HEALTH SYSTEM
AUTHORITY, *et al.*,

    Defendants.

## OPINION

Naliah Harris claims that several acts of discrimination and retaliation illegally ended her employment with the Virginia Commonwealth University Health System Authority ("VCUHS"). She says that her coworkers punished her for reporting racist practices, and that VCUHS denied her requested accommodations for her mental health conditions. For this behavior, Harris filed a *pro se* complaint alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act of 1974 ("ERISA"), and state law.[1] She brings these claims against several defendants: VCUHS, Jennifer Farmer, Stacy Coleman, Ashely Pitts, Elizabeth Overstreet, Ellen Derry, Lisa Snowa, and Annie Duncan.

---

[1] Construing liberally as the Court must for a *pro se* litigant, the Court notes at least seventeen claims. Harris alleges Title VII claims for (1) race discrimination, (2) sex discrimination, (3) retaliation, and (4) wrongful termination. Under 42 U.S.C. § 1981, she alleges (5) race discrimination, (6) retaliation, and (7) wrongful termination. Harris also brings multiple ADA claims for (8) disability discrimination, (9) retaliation, and (10) wrongful termination. Pursuant to the ADEA, she alleges three more claims: (11) age discrimination, (12) retaliation, and (13) wrongful termination. She also complains of (14) interference with her ERISA benefits. Finally, she brings state law claims for (15) wrongful termination, (16) tortious interference with a contract or business expectancy, and (17) coercion.

The defendants move to dismiss the entire suit pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the defendants' motion in full: First, the Court will dismiss Harris's race-related Title VII claims and her ADA claims because the time limit to bring them has expired. Second, Harris's Title VII sex discrimination claims and her ADEA claims fail because she has not exhausted her administrative remedies. Third, Harris fails to state claims for relief under ERISA or § 1981. Finally, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court will dismiss Harris's suit.

## I. BACKGROUND[2]

On August 21, 2023, Harris, an African-American nurse, began working at a children's hospital operated by VCUHS. (ECF No. 1-2, at 3.)[3] "Early in [her] tenure," Harris's direct supervisor, Farmer, asked her "to prepare coaching memos and issue written disciplinary notices for African American nurses." (*Id.* at 4.) Harris "was never directed to counsel or discipline any white nurses" during her tenure. (*Id.*) For several months, Harris observed instances of alleged

---

[2] For 12(b)(6) purposes, courts generally look only to the facts alleged in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). In appropriate cases, however, courts may consider "documents incorporated into the complaint by reference." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citation omitted). When deciding certain antidiscrimination suits, courts may also consider certain EEOC materials not attached to the complaint because they "are integral to the [c]omplaint's administrative history" and, thus, the complaint itself. *Davis v. Navy Fed. Credit Union*, No. 1:11cv1282, 2012 WL 73233, at *3 (E.D. Va. Jan. 10, 2012).

Here, the Court relies on several documents relating to a charge that Harris brought before the United States Equal Employment Opportunity Commission because Harris incorporated her amended charge into her complaint. (*See* ECF No. 1, at 3.) And although Harris did not attach or incorporate her right-to-sue letter, the Court can consider it as an integral part of her complaint. (ECF No. 9-1)

[3] In any citation to the record, page numbers correspond to those assigned by the Court's internal electronic docketing system.

2

racial discrimination against African-American nurses, including demotion or failure to promote. (*Id.* at 4–5.)

On May 31, 2024, she met with VCUHS's Office of Diversity, Equity & Inclusion ("DEI") and Employee Relations Department. (*Id.* at 5.) At the meeting, Harris claimed that she "was being used as 'buffer'" between her supervisors and African-American nurses subject to discipline. (*Id.*) Subsequently, a DEI officer filed an internal complaint. (*Id.* at 5–6.) Despite this internal complaint, Harris's work environment changed: she received previously unheard criticisms of her work, her supervisors closely monitored her attendance, and her superiors curtailed her supervising duties. (*Id.* at 6–8.) Harris also alleges that Farmer gave her drink coasters "with undesirable messages." (*Id.* at 7.)

At some point, Harris filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), which she later amended. (*Id.* at 6.) The amended charge states that she suffers from several psychological ailments and that she had to take a medical leave of absence due to the stress of her employment situation. (*Id.* at 8.) When Harris's doctor found her well enough to work, Harris requested several accommodations from VCUHS: shorter hours, reassignment to a new work unit, the opportunity for remote work or the provision of quiet office space, recording of meetings with supervisors, and more regular meetings with supervisors. (*Id.* at 9.) Although VCUHS approved Harris's requests for shorter hours and more frequent supervisor meetings, they denied all other accommodations. (*Id.* at 9–10.) After the defendants denied Harris's accommodation requests, Harris "was coerced to sign a settlement agreement under threat of termination." (*Id.* at 2.) Upon refusing to sign, Harris "was terminated." (*Id.*) VCUHS also "falsely reported to the Virginia Employment Commission that she was medically discharged" and "had voluntarily resigned." (*Id.*) And, at some point after Harris filed her EEOC complaint, the

3

defendants rejected her various internal applications for a job and hired "four older white individuals" instead. (ECF No. 1, at 3.)

On May 14, 2025, Harris received a right-to-sue letter from the EEOC that authorized her filing a complaint under Title VII. (ECF No. 9-1.)

## II. LEGAL STANDARD

Courts may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017). The Court, however, need not accept as true legal conclusions. *Ashcroft*, 556 U.S. at 678.

Courts also "liberally construe" *pro se* complaints. *Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir. 2024) (quoting *Matherly*, 859 F.3d at 274). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (alteration added). Indeed, the Court need not attempt "to discern the unexpressed intent of the plaintiff." *Id.*

## III. DISCUSSION

### A. Time-Barred Claims under Title VII and the ADA

Once a plaintiff receives a right-to-sue letter from the EEOC, she has ninety days to file her Title VII and ADA claims in a federal court.[4] Courts "strictly" construe this requirement.

---

[4] 42 U.S.C. § 2000e-5(f)(1) (establishing the ninety-day requirement in Title VII); 42 U.S.C. § 12117(a) (incorporating Title VII's procedural requirements into the ADA).

*Ukor v. George Mason Univ.*, No. 1:23cv106, 2023 WL 4976194, at *1 (E.D. Va. Aug. 3, 2023) (citing *Kelly v. City of Alexandria*, 1:19cv553 (E.D. Va. July 30, 2019; Nov. 6, 2019), *aff'd* 830 F. App'x 722 (4th Cir. 2020)).  Indeed, the Fourth Circuit has barred a suit filed just one day after the ninety-day deadline.  *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653–54 (4th Cir. 1987).  Further, courts begin the 90-day clock from the time that a right-to-sue letter enters a plaintiff's inbox, regardless of whether the plaintiff read it at that time.  *Wolfe v. Wps Health Sols.*, No. 4:20cv175, 2012 WL 199207, at *3 (E.D. Va. Apr. 7, 2021) (citations omitted).

Accordingly, courts must dismiss any late claim "absent waiver, estoppel, or equitable tolling."  *Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007) (quoting *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003)).  Equitable tolling "is appropriate only when 'extraordinary circumstances beyond [the plaintiff's] control prevented [them] from complying with the statutory time limit.'"  *Id.* at 797 (alterations in original) (quoting *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)).

Here, Harris filed her Title VII race discrimination claim, Title VII retaliation claim, and her ADA claims[5] after her ninety-day deadline passed.  On May 14, 2025, the EEOC emailed Harris a copy of her right-to-sue letter, giving her until August 12, 2025, to file her claims.  (ECF No. 9-1.)  Harris did not file this suit until August 14, 2025.  (ECF No. 1.)

_____

[5] The Court notes that Harris's right-to-sue letter mentions only her to sue under Title VII, although she amended her EEOC charge to include an ADA claim.  (*See* ECF No. 9-2.)  Generally, courts find that a plaintiff may sue for claims not expressly referred to in her right-to-sue letter if the plaintiff previously amended her EEOC charge.  *See, e.g.*, *McInnis v. N.C. Dep't of Env't and Nat. Res.*, 223 F. Supp. 2d 758, 761–62 (M.D.N.C. 2002).  Accordingly, Harris could bring suit under the ADA within 90 days of the instant letter.

Nevertheless, even if the letter did not give Harris the right to sue, the Court would dismiss Harris's ADA claims for failure to exhaust her administrative remedies.  *See* 42 U.S.C. § 12117(a) (providing for procedural requirements in the ADA).

Harris nevertheless argues that equitable tolling applies because she was "proceeding *pro se*, navigating medical issues, and responding to employer misrepresentations and inconsistent classifications of her separation." (ECF No. 18, at 5.) These reasons, however, do not support the application of equitable tolling. When a plaintiff requests tolling for medical issues, she must explain "how [her] medical condition was so debilitating . . . as to prevent [her] from filing." *United States v. Williams*, 3:07cr123, 2021 WL 6842991, at *2 (E.D. Va. Dec. 29, 2011). Here, Harris has not done so. "Moreover, [a] plaintiff's *pro se* status provides no independent basis for an equitable tolling" the relevant filing period. *Ugbo v. Knowles*, 480 F. Supp. 2d 850, 853 (E.D. Va. 2007) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Accordingly, any difficulties Harris may have faced as a *pro se* litigant do not support equitable tolling.[6]

### B. Administrative Exhaustion of Title VII and ADEA

"[B]efore filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (first citing 42 U.S.C. § 2000e-5(b), (f); then citing 29 U.S.C. § 633a(d)). The allegations in a plaintiff's EEOC charge "define[] the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (alteration added) (citing *Evans v. Techs. Applications and Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)). Courts therefore bar "allegations that fall outside the scope of the EEOC charge." *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 834 (E.D. Va. 2015) (citation omitted). When "the EEOC charge

---

[6] The defendants also ask the Court to dismiss Harris's ADEA claims under the ninety-day deadline. (*See* ECF No. 9, at 5–7.) The Court cannot do so for two reasons: First, Harris never entered an EEOC charge addressing the ADEA. Indeed, Harris's amended EEOC charge discusses only Title VII and the ADA. (*See* ECF No. 1-2, at 3.) Accordingly, although Harris's ADEA claim fails for lack of administrative exhaustion, it does not fail for late filing.

alleges discrimination on one basis, such as race, and the formal litigation alleges discrimination on a separate basis, such as sex, that claim will generally be barred." *Abdelbaki v. N. Va. Cmty. Coll.*, No. 1:21cv73, 2022 WL 811296, at *5 (E.D. Va. Mar. 16, 2022) (citation omitted) (cleaned up).

Harris's EEOC charge mentions neither a sex discrimination claim under Title VII nor an age discrimination claim under the ADEA. (*See* ECF No. 1-2.) Instead, she asserts race discrimination and ADA claims. (*Id.* at 3.) Because Harris's sex discrimination and age discrimination claims plainly "fall outside the scope of the EEOC charge," the Court will dismiss them. *See Sullivan*, 133 F. Supp. 3d at 834.

### C. ERISA Claim

29 U.S.C. § 1140, also called ERISA § 510, prevents interference with ERISA benefits in at least two ways. First, § 1140 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." Second, no person can adversely affect another's employment "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id.* To state the second type of § 1140 claim, "a plaintiff must typically show 1) that there was an adverse employment action, 2) that such action was taken with the purpose of interference with benefits, 3) and that [s]he was otherwise eligible for the benefit." *Obazee v. Wells Fargo Advisor, LLC*, 3:10cv215, 2010 WL 3522091, at *3 (E.D. Va. Sept. 3, 2010) (citations omitted) (alteration added).

Here, Harris does not specify which type of § 1140 claim she pursues. Nevertheless, she fails under either. First, her complaint does not state that anyone discriminated against her for exercising her rights under any ERISA-backed plan. (*See* ECF No. 1, at 2–3.) Second, she has

failed to adequately allege that anyone acted for the purpose of interfering with her benefits. "In construing the 'purpose' requirement . . ., the Fourth Circuit has required proof that the malefactor acted with the specific intent of depriving the plaintiff of the relevant benefit." *Obazee*, 2010 WL 3522091, at *3 (citing *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238 (4th Cir. 1991)). Without specific "factual allegations" supporting the intent requirement, courts will dismiss the claim because the intent element "is nothing more than [the plaintiff's] subjective speculation." *Eweka v. Hartford Life and Accident Ins. Co.*, 955 F. Supp. 2d 556, 565 (E.D. Va. 2013).

Harris's complaint offers two relevant factual allegations, but neither support the intent element: (1) she "was coerced to sign a settlement agreement under threat of termination," and (2) "VCUHS falsely reported to the Virginia Employment Commission that she was medically discharged" and "had voluntarily resigned." (ECF No. 1, at 2.) Without more facts showing that the defendants engaged in these actions with the intent to deprive Harris of ERISA benefits, these allegations remain mere "subjective speculation." *See Eweka*, 955 F. Supp. 2d at 565.

Accordingly, the Court will dismiss Harris's ERISA claim for failure to state a claim.[7]

### D. Section 1981 Claims[8]

The Court construes Harris's complaint as raising three claims under 42 U.S.C. § 1981: racial discrimination, retaliation, and wrongful termination. Although courts sometimes use

---

[7] The defendants also ask the Court to dismiss the individual defendants because Harris fails to adequately plead their individual liability for the ERISA claim. (ECF No. 9, at 11–12.) Because the Court will dismiss on other grounds, the Court need not reach the individual liability argument.

[8] The defendants ask the Court to dismiss all "federal statutory claims asserted under Counts I through V" pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8, at 2.) The Court therefore considers any potential § 1981 claim under Rule 12(b)(6).

different language to describe these claims, all § 1981 claims share some common elements.[9] "To succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). Importantly, a § 1981 plaintiff also bears a substantial causal burden in all claims: She must plead "that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am-Owned Media*, 589 U.S. 327, 341 (2020).

Harris does not sufficiently allege the causation element of any of her § 1981 claims. On her termination claim, for example, her allegations do not explain whether the dispute over requested disability accommodations or the alleged racial complaints provided the "but for" causation of her termination. *See id.* Further, without more facts alleging that all decisionmakers knew of Harris's complaints, Harris does not state but for causation on her retaliation claim. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (requiring that decisionmakers know of a plaintiff's complaints). Finally, as for a race discrimination claim, Harris does not offer facts from which the Court can differentiate this generalized racial discrimination claim from her other § 1981 claims. Accordingly, it fails for the same reasons. Even liberally construing Harris's *pro se* complaint, the Court cannot "fill the gaps" by speculating on more facts that would prove but for causation. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015). The Court will therefore dismiss the § 1981 claims.

---

[9] After all, they arise from the same statute, which guarantees all people "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

### *E. State Law Claims*

28 U.S.C. § 1367(c)(3) authorizes a district court to decline supplemental jurisdiction over a claim when the court has dismissed all other claims over which the court has original jurisdiction. The remaining claims in Harris's complaint—for wrongful termination, tortious interference with a contract or business expectancy, and coercion—arise from state law. Accordingly, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

## III. <u>CONCLUSION</u>

The Court will dismiss Harris's Title VII, ADA, and ADEA claims for failure to properly adhere to the proper administrative processes. Further, Harris's ERISA claim fails to properly plead the intent element. Likewise, Harris fails to state her claims under § 1981 claims. Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court will dismiss the suit in its entirety.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the *pro se* plaintiff.

Date: 3/9    2026
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

10